**No. 2022-2291**

# United States Court of Appeals for the Federal Circuit

IMPACT ENGINE, INC.,
*Plaintiff-Appellant*

v.

GOOGLE LLC,
*Defendant-Appellee*

Appeal from the United States District Court for the Southern District of California, No. 3:19-cv-1301-CAB-DEB, Judge Cathy Ann Bencivengo

## IMPACT ENGINE'S REPLY BRIEF

Garret A. Leach, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Sharre Lotfollahi, P.C.
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
(310) 552-4200

Jason M. Wilcox, P.C.
Stephen C. DeSalvo
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 389-5000

*Counsel for Plaintiff-Appellant Impact Engine, Inc.*

June 26, 2023

# CERTIFICATE OF INTEREST

Counsel for Impact Engine, Inc. certify the following:

| **1. Represented Entities**<br><br>The full names of all entities represented by undersigned counsel in this case are: | **2. Real Party in Interest**<br><br>The full names of all real parties in interest for the entities are: | **3. Parent Corporations and Stockholders**<br><br>The full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities: |
|---|---|---|
| Impact Engine, Inc. | None/Not Applicable | None |

**4. Legal Representatives.** The law firms, partners, and associates that (a) appeared for the entities in the originating court or (b) are expected to appear in this Court for the entities, but who have not already entered an appearance in this Court, are:

KIRKLAND & ELLIS LLP: Xaviere Giroud, Kyle Kantarek, Nikhil Krishnan, Caroline Lourgos, Megan New, Katherine O'Sullivan, Justin Singh, Benjamin Yaghoubian

RUTTENBERG IP LAW, PC: Guy Ruttenberg

**5. Related Cases.** The titles and numbers of the cases known to be pending in this Court or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal are:

None/Not Applicable

**6. Organizational Victims and Bankruptcy Cases.** Information required under Fed. R. App. P. 26.1(b) and 26.1(c): None/Not Applicable

# TABLE OF CONTENTS

Introduction ........ 1
Argument ........ 3
I. The Asserted Claims Recite Patent-Eligible Subject Matter ........ 3
  A. The Claims Are Not Directed To An Abstract Idea ........ 4
  B. The Claims Recite An Inventive Concept. ........ 14
    1. The Claimed Invention Is An Unconventional Combination of Specific Components. ........ 14
    2. The Claimed Server-Side Architecture Instills The Claims With An Inventive Concept. ........ 18
  C. The "Project Viewer" Claims Are Patent-Eligible For Additional Reasons. ........ 22
  D. Google's Alternative Invalidity Challenges Should Be Rejected. ........ 24
II. The District Court Improperly Granted Summary Judgment Of Noninfringement. ........ 27
  A. The District Court Improperly Construed The Claimed "Project Viewer." ........ 27
    1. Impact Engine Did Not Forfeit Its Claim Construction Arguments ........ 27
    2. The District Court Erred By Not Tailoring The Required Structures To The Claimed "Project Viewer" Functions. ........ 29
  B. Material Factual Disputes Preclude Summary Judgment Of Noninfringement ........ 35
III. The District Court Erroneously Granted Summary Judgment Of Invalidity Under §112. ........ 37
Conclusion ........ 41

# TABLE OF AUTHORITIES

## Cases

**Page(s)**

*ADASA v. Avery Dennison*,
55 F.4th 900 (Fed. Cir. 2022) .......... 10

*Affinity Labs of Tex. v. Amazon.com*,
838 F.3d 1266 (Fed. Cir. 2016) .......... 8

*Ajinomoto Co. v. Int'l Trade Comm'n*,
932 F.3d 1342 (Fed. Cir. 2019) .......... 38

*Alice v. CLS Bank*,
573 U.S. 208 (2014) .......... 17

*Amdocs (Israel) v. Openet Telecom*,
841 F.3d 1288 (Fed. Cir. 2016) .......... 15

*Amgen v. Sanofi*,
143 S. Ct. 1243 (2023) .......... 38

*Ariad Pharm. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) (en banc) .......... 38

*BASCOM Global Internet Servs. v. AT&T Mobility*,
827 F.3d 1341 (Fed. Cir. 2016) .......... 15, 17, 18, 20, 22

*In re Bigio*,
381 F.3d 1320 (Fed. Cir. 2004) .......... 21

*CardioNet v. InfoBionic*,
955 F.3d 1358 (Fed. Cir. 2020) .......... 7, 10

*CCS Fitness v. Brunswick*,
288 F.3d 1359 (Fed. Cir. 2002) .......... 28

*Chaffin v. Braden*,
696 F. App'x 1001 (Fed. Cir. 2017) .......... 28

*ChargePoint v. SemaConnect*,
920 F.3d 759 (Fed. Cir. 2019) .......... 26

*Clearstream Wastewater Sys. v. Hydro-Action*,
206 F.3d 1440 (Fed. Cir. 2000) .......... 35

*Core Wireless Licensing v. LG Elecs.*,
880 F.3d 1356 (Fed. Cir. 2018) .......... 5

*Customedia Techs. v. Dish Network*,
951 F.3d 1359 (Fed. Cir. 2020) .......... 6

*Data Engine Techs. v. Google*,
906 F.3d 999 (Fed. Cir. 2018) .......... 8, 13

*DDR Holdings v. Hotels.com*,
773 F.3d 1245 (Fed. Cir. 2014) .......... 20

*Finjan v. Blue Coat Sys.*,
879 F.3d 1299 (Fed. Cir. 2018) .......... 8, 9

*FS.com v. Int'l Trade Comm'n*,
65 F.4th 1373 (Fed. Cir. 2023) .......... 38

*Granfinanciera v. Nordberg*,
492 U.S. 33 (1989) .......... 25

*Hawk Technology Systems v. Castle Retail*,
60 F.4th 1349 (Fed. Cir. 2023) .......... 26, 27

*IBM v. Zillow Group*,
50 F.4th 1371 (Fed. Cir. 2022) .......... 6, 8, 13

*Intellectual Ventures I v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) .......... 8

*Intellectual Ventures I v. Symantec*,
838 F.3d 1307 (Fed. Cir. 2016) .......... 8

*Koninklijke v. Gemalto M2M*,
942 F.3d 1143 (Fed. Cir. 2019) .......... 6, 8, 9

*McRO v. Bandai Namco Games America*,
837 F.3d 1299 (Fed. Cir. 2016) ........................................ 8, 9, 10, 13, 14

*MobileMedia Ideas v. Apple*,
780 F.3d 1159 (Fed. Cir. 2015) ........................................................... 35

*MTD Prods. v. Iancu*,
933 F.3d 1336 (Fed. Cir. 2019) ........................................................... 23

*In re Nintendo*,
544 F. App'x 934 (Fed. Cir. 2013) ....................................................... 40

*People.ai v. Clari*,
No. 22-1364, 2023 WL 2820794 (Fed. Cir. 2023) ................................ 13

*Riggs Tech. Holdings v. Cengage Learning*,
2023 WL 193162 (Fed. Cir. Jan. 17, 2023) .......................................... 19

*In re Salwan*,
681 F. App'x 938 (Fed. Cir. 2017) ....................................................... 19

*SAP America v. InvestPic*,
898 F.3d 1161 (Fed. Cir. 2018) ............................................................. 6

*Simio v. FlexSim Software Prods.*,
983 F.3d 1353 (Fed. Cir. 2020) ................................................. 6, 13, 16

*Streck v. Rsch. & Diagnostic Sys.*,
665 F.3d 1269 (Fed. Cir. 2012) ........................................................... 39

*TecSec v. Adobe*,
978 F.3d 1278 (Fed. Cir. 2020) ........................................................... 10

*In re TLI Commc'ns LLC Pat. Litig.*,
823 F.3d 607 (Fed. Cir. 2016) ............................................................. 19

*Trading Techs. Int'l v. CQG*,
675 F. App'x 1001 (Fed. Cir. 2017) ..................................................... 24

*Trustees of Boston University v. Everlight Electronics*,
896 F.3d 1357 (Fed. Cir. 2018) ........................................................... 39

*TypeRight Keyboard v. Microsoft*,
374 F.3d 1151 (Fed. Cir. 2004) .................... 25, 26

*Uniloc USA v. ADP*,
772 F. App'x 890 (Fed. Cir. 2019) .................... 20

*Univ. of Pittsburgh v. Varian Med. Sys.*,
561 F. App'x 934 (Fed. Cir. 2014) .................... 31

*Unwired Planet v. Apple*,
829 F.3d 1353 (Fed. Cir. 2016) .................... 25

*Vistan v. Fadei USA*,
547 F. App'x 986 (Fed. Cir. 2013) .................... 28

*Zuili v. Google*,
722 F. App'x 1027 (Fed. Cir. 2018) .................... 19

**Statutes**

35 U.S.C. § 112(a) .................... 38

**Note:** All quoted emphasis is added unless otherwise indicated.

## INTRODUCTION

The inventions described in the asserted claims fundamentally changed how online advertisements are created and distributed. The claims covering those inventions are anything but abstract, as the district court initially recognized in twice rejecting Google's §101 arguments before later reversing course. Each one describes how to create dynamic, media-rich online advertisements using an unconventional combination of software elements and, in several instances, specific data structures; ten claims include means-plus-function limitations incorporating detailed algorithms from the specification.

Google largely ignores the claimed combinations. Instead, Google focuses its §101 arguments on individual components it contends were well-known, repeating a mistake this Court has frequently corrected. Section 101 asks whether claims improve a technological process, not whether they run on specialized hardware or require novel programming techniques. Here, the claimed inventions not only consume significantly less internet bandwidth but also made hyper-targeting different versions of the same ad campaign in real-time based on the unique characteristics of different viewers a reality. Appx11063. Google's focus on individual

components rather than the claimed combination is ultimately a symptom of a larger problem with its position. When Google describes the claimed inventions, it does so at such a high level of generality that the inventions are barely recognizable and elide the innovative combinations Impact Engine pioneered.

Google primarily defends the district court's non-infringement summary judgment decision for two other claims by arguing forfeiture. But Impact Engine did not forfeit its arguments about the appropriate corresponding structure for the "project viewer" term. Impact Engine's proposed structure below is the same as its proposal on appeal. On the merits, Google's position that the project viewer's rendering functionality requires 300-plus lines of corresponding structure is facially implausible and contradicted by the specification and the construction Google itself originally proposed. It also sweeps in structure for other claimed functions, violating the cardinal rule that the corresponding structure need only include what is necessary to perform the claimed function.

Google's §112 argument for claim 30 of the '898 patent would effectively gut the summary judgment standard and Google's clear-and-convincing burden of proof. Google concedes it offered no expert testimony

to support its motion that the '898 patent does not enable or describe a compiling engine that groups individual design elements into a collection of slides. It admits Impact Engine submitted expert testimony rebutting Google's arguments. Google even acknowledges the specification describes how a "project viewer" would perform the claimed tasks of the "compiling engine." In its response, Google nonetheless asks this Court to affirm a two-paragraph decision that invalidated claim 30 without discussing the evidence or the law. The high bar for invalidating a claim—at summary judgment no less—cannot be satisfied so easily. This Court should reverse.

## ARGUMENT

### I. The Asserted Claims Recite Patent-Eligible Subject Matter.

Google advances several arguments defending the district court's erroneous determination that certain asserted claims are invalid under §101, but those arguments largely repeat the district court's mistakes. Although Google emphasizes §101 focus on the claims, RedBr.30, it focuses on individual claim elements in isolation rather than assessing each asserted claim as a whole as Impact Engine did in its opening brief. *See* BlueBr.33-36, 47-50. When the claims are viewed as a whole, it is

clear they recite more than an abstract idea and embody important inventive concepts.

### A. The Claims Are Not Directed To An Abstract Idea.

The asserted claims, which each recite systems requiring a specific combination of components and steps that amount to more than simply "generating customized or tailored computer communications based on user-provided information," are not directed to an abstract idea. RedBr.25 (citing Appx14-17; Appx25-26). Google's arguments suggesting otherwise are meritless.

*First*, Google's contention that the claimed invention "merely 'improv[ed] a user's experience'" rather than "the computer's functionality" is incorrect. RedBr.31 (emphasis omitted). Prior-art ads consumed significant bandwidth due to their large file size. Appx7999; Appx8009-8010; Appx11062; Appx11318(¶1086); Appx11331(¶1119). Impact Engine's claimed systems fixed this problem by developing media-rich online advertisements that consume less bandwidth due to their layered structure. That layered structure based on slides comprised of media assets and other components allows these assets and components to be transmitted as multiple smaller files and then

assembled in real time at viewers' devices. Appx47(1:44-51); Appx8020-8031; Appx11062-11063; Appx11334(¶¶1201-1203); Appx11335-11336(¶1206); *see Core Wireless Licensing v. LG Elecs.*, 880 F.3d 1356, 1359-63 (Fed. Cir. 2018).

Google's only response is this improvement is not claimed and is supposedly "inherent[] from using servers." RedBr.30, 39; *see* RedBr.27-28, 31. But Google is wrong on both counts. The claimed "communications" consume less bandwidth precisely because they are "a collection of slides" serialized into layers made up of media components accessible through a server. Appx11478-11479; *see* Appx53(14:38-52) Appx11063; Appx11334(¶¶1202-1203); Appx11335-11336(¶1206). Google's assertion that the bandwidth benefit is inherent in using a server, RedBr.39, is unsupported attorney argument, overlooks the claimed combination, and ignores that a "server" or "network" is recited in every asserted claim.

Indeed, Google's inherency argument makes no sense. Making prior-art ads on a server would not by itself lessen the bandwidth burden associated with distributing them. It is the rest of the claimed components *combined with* the server-side architecture that drives the

bandwidth savings. Appx11060; Appx11334(¶1202); Appx11335-11336(¶1206). The claims here are thus nothing like those in Google's cases, which did not "improv[e] a computer's functionality." *Simio v. FlexSim Software Prods.*, 983 F.3d 1353, 1361 (Fed. Cir. 2020); *IBM v. Zillow Group*, 50 F.4th 1371, 1381 (Fed. Cir. 2022); *Customedia Techs. v. Dish Network*, 951 F.3d 1359, 1362-65 (Fed. Cir. 2020); *SAP America v. InvestPic*, 898 F.3d 1161, 1168 (Fed. Cir. 2018).

*Second*, Google is wrong that the claims merely recite the result of "soliciting input and producing communications." RedBr.32. Rather than describe a desired result, each asserted claim "recite[s] a specific solution for accomplishing that goal" through concrete steps and specific data structures. *Koninklijke v. Gemalto M2M*, 942 F.3d 1143, 1151 (Fed. Cir. 2019). For example, claim 1 of the '497 patent requires "a media repository" housing specific items accessible online and a "project builder" with a "graphical user interface" further comprising specific "controls" to allow users to take specific actions to "assembl[e] a communication" (*i.e.*, "a collection of slides" arranged in "layers") based specifically on information obtained through an "interactive interview." Appx53(14:38-59); Appx11478-11479; Appx11483. Google fails to

address this specific *combination* of elements, which offers "a specific means or method" to accomplish a desired "result or effect" in a particular way. *CardioNet v. InfoBionic*, 955 F.3d 1358, 1368 (Fed. Cir. 2020).

Google likewise never grapples with the specific *combination* of elements in the asserted claims of the '618, '8,253, '832, and '632 patents. The '618 patent's claims perform "targeted broadcasting" of online advertisements using "a server" hosting "a media repository for storing" specific items, a "compiler" tasked with "integrating" items from that repository to make "an online advertisement," and a "project builder" tasked with "selecting" items for the ad dynamically from the media repository based on "data" from the ad viewer's device. Appx186-187(16:53-17:16, 17:21-24, 17:48-18:25). The claims of the three other patents cover tools for integrating media assets into advertising templates and require multiple distribution formats (such as mobile, text, and video) for the resulting advertisement. Appx159(15:14-18, 15:25-42, 16:28-42); Appx104-105(14:62-15:17); Appx132(15:3-10). Google focuses on individual claim elements, RedBr.26, 28-29, 32, but it is the "ordered combination[s]" in these claims that "allow for the improvement realized by the invention" that is anything but abstract.

*McRO v. Bandai Namco Games America*, 837 F.3d 1299, 1313 (Fed. Cir. 2016).

The claims in the cases Google cites, which only recited a desired result, look nothing like the claims here. RedBr.26-27; *see Affinity Labs of Tex. v. Amazon.com*, 838 F.3d 1266 (Fed. Cir. 2016); *Intellectual Ventures I v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015); and *Intellectual Ventures I v. Symantec*, 838 F.3d 1307 (Fed. Cir. 2016). This Court has repeatedly distinguished the claims in those cases from claims like those here that "recite more than a mere result" but instead "specific steps … that accomplish the desired result" using an innovative and specific arrangement of components and steps. *Finjan v. Blue Coat Sys.*, 879 F.3d 1299, 1305-06 (Fed. Cir. 2018); *Data Engine Techs. v. Google*, 906 F.3d 999, 1010 n.3 (Fed. Cir. 2018). *Zillow*, which involved "result-oriented" and "functional" claims without specific steps for accomplishing them, is inapposite for the same reason. 50 F.4th at 1381.

Google labels the claim elements "functional implementations" that "do not specify how the claimed results must be achieved." RedBr.32. But that is incorrect. In *Koninklijke*, this Court held a claimed device for error checking comprising "[a] generating device," "a varying device," and

"a permutating device" deployed in a specific manner (*i.e.*, "by varying the way check data is generated") to achieve the claimed result sufficiently explained "how" to achieve that result. 942 F.3d at 1147-48, 1151-53; *Finjan*, 879 F.3d at 1303, 1305-06 (concluding a claim reciting a method comprising "receiving" a downloadable, "generating" a security profile, and "linking" that profile to the downloadable sufficiently stated "how" to implement the invention). The claims here are no different. The *how* for creating, modifying, and distributing dynamic, media-rich communications is established by the specific components and steps combined and expressly detailed in the claims. This is particularly true of claims requiring a "project viewer," which is limited to specific algorithms in the specification. *See infra* §I.C.

Google also "oversimplif[ies] the claims." *McRO*, 837 F.3d at 1313. Asserting that the claims are directed to "generating customized or tailored computer communications based on user-provided information," RedBr.25, "fail[s] to account for the specific requirements of the claims," which show they "are limited to [systems] with specific characteristics," *McRO*, 837 at 1313. To the extent Google focuses on individual claim components—such as templates, user preferences, media assets, and

communications—it does so merely to call them "well-known," "conventional," "abstract," "familiar," and "generic," RedBr.26-27, 28, 32, while overlooking their unconventional combination and the specific tasks they perform. *See TecSec v. Adobe*, 978 F.3d 1278, 1296 (Fed. Cir. 2020) (faulting defendant for ignoring "important aspects of the claims" and "the combination").

*Third*, Google incorrectly contends the claims fail to provide "a technological improvement" and offer "no technological benefit." RedBr.29-30 (emphasis omitted). Quite the opposite. "[T]he focus of the claim[s] is a specific and concrete technological advance" over prior-art processes. *ADASA v. Avery Dennison*, 55 F.4th 900, 908 (Fed. Cir. 2022). Prior-art media-rich online advertisements required hiring expensive graphic designers with programming knowledge to undergo a labor-intensive process unique to each ad. Appx47(1:12-23); Appx11178-11179(¶¶46-47); Appx11320-11321(¶¶1091-1093). Impact Engine's claimed inventions improved that process with a different, better approach. Appx47(1:41-44, 1:65-2:22, 2:49-63); Appx1264-1265(¶¶55-57); Appx11186(¶¶82-83); Appx11333-11334(¶¶1200-1202); *McRO*, 837 F.3d at 1307, 1314; *CardioNet*, 955 F.3d at 1370-71.

The claimed inventions also provide other technological advances. Google does not dispute that prior-art processes required hiring professionals to update and manually post advertisements one-at-a-time for every desired change no matter how minor. Appx1259(¶33); Appx11176-11179(¶¶40-47); Appx11318-11319(¶1087); Appx11320-11321(¶¶1091-1093). Impact Engine's claimed inventions offered a better solution. Using the claimed technologies, ad content can be updated almost instantaneously even after the ad is live, Appx51(9:17-29, 9:64-10:3); Appx1254(¶17); Appx11181(¶¶51-52), and the content can be dynamically tailored based on recipient data, such as location or screen size. Appx47(1:56-64); Appx51(9:47-50); Appx11182(¶54); Appx11186(¶82); Appx11334(¶1201). These are not mere "improv[ements] [in] a user's experience," RedBr.29, but rather a sea-change in media-rich online advertising.

Contrary to Google's arguments, these technological advances are central to the asserted claims. RedBr.27-30; *see* Appx11333-11335(¶¶1200-1201, ¶¶1203-1205); Appx11336-11337(¶¶1208-1209). For example, the claimed systems rely on specific steps such as selecting and integrating templates and assets from a network-based repository

accessed through a graphical user interface to enable lay users to make and modify the advertisements. Appx53(14:38-59); Appx104-105(14:55-15:21); Appx131-132(14:56-15:14); Appx159(15:14-42, 15:60-63, 16:14-47); Appx186-187(16:53-17:16, 17:48-18:18). As another example, the claimed systems are also server-side systems for creating "communications" that are "collection[s] of slides" made in layers and based on component media assets that can be easily swapped to enable live updating. Appx11478-11479; *see* Appx53(14:50-59); Appx104-105(14:66-15:2); Appx131(14:61-65); Appx159(15:14-35, 15:40-42, 16:19-38, 16:43-47); Appx186-187(16:53-17:10, 17:14-16, 17:48-18:5, 18:15-18). Google argues these technological advancements are not connected to the graphical user interface, RedBr.28-29, but ignores the claims expressly state the layered communication is assembled using templates and media assets accessible over a network via "a graphical user interface." Appx53(14:38-59); Appx104-105(14:55-15:21); Appx131-132(14:56-15:14); Appx159(15:14-42, 16:14-47); Appx186-187(16:53-17:16, 17:48-18:18).

Moreover, Google focuses myopically on the graphical user interface as if it were the entirety of the asserted claims. RedBr.28-30. It is not.

It is the way the claimed graphical user interface is deployed—in conjunction with other claimed components—to achieve the benefits discussed above that renders the claims non-abstract and patent-eligible. *See Data Engine*, 906 F.3d at 1010 (challenged claim was "not simply directed to displaying a graphical user interface or" improving basic computer tasks). For those reasons, Google's cases—*Simio*, 983 F.3d at 1361; *People.ai v. Clari*, No. 22-1364, 2023 WL 2820794, at *8-11 (Fed. Cir. 2023); and *Zillow*, 50 F.4th at 1377-78, 1381—in which the challenged claims failed to recite a specific combination of components or steps implemented on a computer in a way that improves the relevant technology are irrelevant.

*Fourth*, there is no evidence that the claimed inventions are directed "to automating previously manual tasks." RedBr.34; *see* RedBr.25-28, 33. Even if there were, this Court has consistently held "that processes that automate tasks that humans are capable of performing are patent eligible if properly claimed." *McRO*, 837 F.3d at 1313; *Data Engine*, 906 F.3d at 1011. Just like the patent-eligible claims in *McRO* and *Data Engine*, the asserted claims here are patent-eligible because they are directed to specific systems that improve the prior-art

technological process of generating, modifying, and distributing media-rich online advertisements using a "computer-automated process" that is not "carried out in the same way" as "the prior method." *McRO*, 837 F.3d at 1314; BlueBr.33, 40-41. Because the asserted claims are not directed to an abstract idea, those claims are patent-eligible and the district court's decision should be reversed.

### B. The Claims Recite An Inventive Concept.

#### 1. The Claimed Invention Is An Unconventional Combination of Specific Components.

Even if the asserted claims were directed to an abstract idea, they remain patent-eligible because they recite an inventive concept. Google's argument that "[t]he claims use generic components, and those components operate in their conventional manner," ignores the unconventional nature of the claimed combinations. RedBr.34. The claimed systems allowed lay users for the first time to create media-rich online advertisements using a graphical user interface—in conjunction with a "project builder" and other specific components performing specific tasks—to integrate media assets into project templates from a network-based repository. Appx29(Abstract); Appx1264-1265(¶¶55-57); Appx53(14:38-59); Appx104-105(14:55-15:21); Appx131-132(14:56-15:14,

16:39-42); Appx159(15:14-42, 15:60-63, 16:14-47); Appx186-187(16:53-17:16, 17:48-18:25); Appx11181(¶¶51-52); Appx11321(¶1094); Appx11331(¶1119); Appx11334-11336(¶¶1203-1206). This combination allowed the technological advances, including improvements in computer functionality, discussed above.

Like the district court, Google faults the claims for reciting "generic components" and "familiar construct[s]" that "Impact Engine never purported to have invented" and its expert said were known. RedBr.34-35; Appx15-17. But this Court previously rejected this mode of analysis because claims reciting "generic components [that] operate in an unconventional manner," as is the case here, are patent-eligible. *Amdocs (Israel) v. Openet Telecom*, 841 F.3d 1288, 1300-01 (Fed. Cir. 2016); *BASCOM Global Internet Servs. v. AT&T Mobility*, 827 F.3d 1341, 1349-50 (Fed. Cir. 2016). Google contends the claimed components "operat[e] according to their ordinary functions," but cites nothing supporting that proposition. RedBr.36. As Impact Engine argued during prosecution, the unique functions the project builder performs in the '618 patent's asserted claims distinguished it from prior-art "project builders." Appx11511.

This fact puts the lie to Google's assertion that Impact Engine has "tried to have [it] both ways in this case." RedBr.1, 11, 13-14, 34-35. Impact Engine is not talking out of both sides of its mouth by arguing that its claims are patent-eligible and that the project builder and other claim elements were "known program construct[s] that would be familiar to one of skill in the art" for purposes of claim construction. RedBr.11. Although a "project builder" and "project viewer" were known constructs, their *use* in innovative ways *in combination with other components* in the claimed systems renders their implementation neither routine nor conventional. *Compare* Appx7561-7563; Appx12179-12180, *with* Appx994-995; Appx1004-1006; Appx12534-12535; *see* Appx12605-12606; Appx12076-12077(25:17-26:1); Appx12079(28:3-7). The district court initially recognized this "distinction" between "using existing technology" and using that technology "in [a] way" that "was not routine," before later reversing course. Appx12056-12057.

It is no answer that "novelty does not overcome 'the problem of abstractness.'" RedBr.35 (quoting *Simio*, 983 F.3d at 1364). Impact Engine has never suggested otherwise. The asserted claims are not patent-eligible simply because they are novel (though they are), but

rather because the specific combination of elements in those claims "amount[] to significantly more than a patent upon the [alleged abstract idea] itself" and thus embody an "inventive concept." *Alice v. CLS Bank*, 573 U.S. 208, 217-18 (2014). Google's bare assertion that these benefits are not "inherent results" of the claimed systems is contradicted by the record. RedBr.36; Appx11333-11336(¶¶1200-1206). It likewise makes no difference that the benefits of the claimed invention are not expressly recited in the claims. Google scours the claims for "'media-rich'-ness," "professional artists," and other phrases. RedBr.35-36. But nothing in this Court's §101 jurisprudence requires that, to find an inventive concept, the claims must recite particular buzzwords associated with concrete results that are indisputably achieved by the claimed combination.

The specific structures and resulting benefits of the media-rich online advertisements made using the claimed systems amount to more than mere plug-and-play use of templates and media assets as Google argues. RedBr.35. Like the patent-eligible claims in *BASCOM* that recited an "inventive concept" of installing "a filtering tool at a specific [remote] location … with customizable filtering features specific to each

end user," 827 F.3d at 1350, the asserted claims here "recite a specific, discrete implementation of the [alleged] abstract idea" using a "particular arrangement of elements" that accomplishes "a technical improvement over prior art ways" of making online advertisements. *Id.* These claimed inventions go well beyond merely computerizing or automating an abstract idea using known tools. RedBr.36-37. That prior-art online advertisements (suffering from the problems the claimed systems fixed) were made and distributed using computers further highlights the "specific innovative technolog[ical]" advancement that Google contends is missing.[1] RedBr.36; Appx11176-11182(¶¶40-53).

### 2. The Claimed Server-Side Architecture Instills The Claims With An Inventive Concept.

Google argues "using a server was not inventive," but overlooks the inventiveness of implementing the claimed combination on a server. RedBr.37. Placing components on a server as claimed enables (in part) the claimed combination to achieve its technological advances over prior-art processes. Appx47(1:12-16, 2:49-52); Appx48(3:6-8); Appx1263(¶53); Appx1264-1265(¶¶55-56); Appx11181(¶53). Google responds that

[1] Google's suggestion that some "teaching away or unpredictability" is needed to find an inventive concept is not the law. RedBr.36.

servers were known and locating a "project builder" and graphical user interface on a server were "familiar" and thus "not inventive." RedBr.37. But again, what was neither known nor familiar was the claimed server-side combination of specific steps and components used to achieve a concrete result. Appx1263(¶53); Appx1264-1265(¶¶55-56); Appx11181(¶53). Regardless of whether certain claimed "*tools*" would have been "familiar," Appx11483, their specific uses in the claimed combinations were not known, familiar, or conventional.

For that reason, Google's cases are distinguishable. RedBr.37-38. In those cases, unlike here, the challenged claims merely relocated known functions or components to a generic server. *See In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 614-15 (Fed. Cir. 2016); *Zuili v. Google*, 722 F. App'x 1027, 1030-31 (Fed. Cir. 2018); *In re Salwan*, 681 F. App'x 938, 941 (Fed. Cir. 2017); *Riggs Tech. Holdings v. Cengage Learning*, 2023 WL 193162, at *3-4 (Fed. Cir. Jan. 17, 2023). Here, the server-side architecture enables (in part) certain technological advancements achieved by the claimed systems, such as near-instantaneous updates to the templates and media assets assembled at the recipient's device each time the device is refreshed, underpinning the

dynamic tailoring of those ads' content based on recipient data. *See* Appx105(15:10-13); Appx132(15:1-2, 15:15-24); Appx1264-1265(¶¶55-56). Because the asserted claims do more than merely use a server and are rooted in improvements to computer technology, the claimed combinations "yield[] substantially more than their sum" and Google's attempts to distinguish *BASCOM* and *DDR Holdings v. Hotels.com*, 773 F.3d 1245 (Fed. Cir. 2014), on this basis are unfounded. RedBr.38-39; *see Uniloc USA v. ADP*, 772 F. App'x 890, 899 (Fed. Cir. 2019) (holding claims were patent-eligible because "positioning" certain "components on [an] application server" was "akin to an inventive concept" as claimed).

The inventive combination of claimed components—including the uniquely layered structure of the claimed communications made and distributed over a network—enabled advertisers to perform targeted broadcasting. That targeted broadcasting leveraged the real-time assembly of ads at each viewer's device by dynamically populating the ad with media assets tailored based on real-time data, such as device size or geographic location, about each viewer. Appx11063; Appx11334-11336(¶¶1201-1206); Appx105(15:11-13); Appx159(15:26-42, 16:39-47); Appx186-187(16:53-17:10, 17:14-16, 17:48-18:5, 18:15-18). Thus, for the

first time, hyper-targeting on-the-fly a virtually unlimited number of versions of the same ad campaign based on real-time information about each viewer became a reality. Appx11063.

Google further argues the asserted claims' technological advances are either inherent "from using servers (saving bandwidth)" or "untethered to the server-side location ('easily making custom ads')." RedBr.39. That is again incorrect. The server itself is not what lessens bandwidth consumption, Appx11334(¶¶1202-1203), and advances in instantaneously updating and dynamically tailoring media-rich online advertisements are necessarily tied to the claimed server-side architecture. Appx1264-1265(¶¶56-57).

Finally, the Patent Office's determination that the asserted claims of the '618 patent are patent-eligible is telling. Appx1094. Google's argument that the Patent Office's decision "preceded the broad constructions issued by the district court," RedBr.40, ignores that the Patent Office applied "the broadest reasonable" claim construction, *In re Bigio*, 381 F.3d 1320, 1324 (Fed. Cir. 2004). Even giving the claims of the '618 patent that broad gloss, the Patent Office correctly found them patent-eligible.

### C. The "Project Viewer" Claims Are Patent-Eligible For Additional Reasons.

The asserted claims of the '8,253, '832, and '632 patents—which require a "project viewer"—are patent-eligible for another reason: they are means-plus-function claims limited to specific structures in the specification. Appx105(15:18-21, 16:11-13, 16:22-24); Appx132(15:11-17, 15:20-24, 16:20-26, 16:39-42); Appx159(15:25-29, 15:57-63, 16:28-33). Claims like these reciting "a specific, discrete implementation" of an allegedly "abstract idea" using "[a] particular arrangement of elements" are patent-eligible. *BASCOM*, 827 F.3d at 1350.

Google's contrary arguments ignore the district court's claim construction. The district court held every claim reciting a "project viewer" required the same 300-plus lines of corresponding structure regardless of the function it performs. Appx24; *see* Appx7. In a bit of revisionist history, Google contends "the court recognized that the 'project viewer' functions differ by claim" and observed the viewer in the claims of the '8,253, '832, and '632 patents "operates 'in its known and familiar capacity.'" RedBr.41 (quoting Appx25-26). A few pages later, Google insists "the court ultimately applied its means-plus-function construction only to the two claims that recited a 'project viewer' with

rendering functionality" and not the claims of the '8,253, '832, and '632 patents that recite different functions. RedBr.50-51.

The district court's §101 analysis is flawed either way. The district court cannot pick-and-choose when it treats "project viewer" as a means-plus-function term, treating "project viewer" as a nonce term in some claims but not others. A term either "connotes sufficiently definite structure" or it doesn't. *MTD Prods. v. Iancu*, 933 F.3d 1336, 1343-44 (Fed. Cir. 2019). And the six columns of corresponding structure in the specification giving meaning to the claimed project viewer, at least under the district court's construction, provides an inventive concept that renders any claim reciting a project viewer patent-eligible. *See* Appx16 n.6. To the extent Google implies the district court recognized project viewer is a means-plus-function term in the '8,253, '832, and '632 patents but did not identify the corresponding structure, that is equally problematic. RedBr.23, 54-55. A court cannot invalidate a means-plus-function claim without identifying the corresponding structure and assessing whether that structure supplies an inventive concept.

Unlike Google and the district court, Impact Engine identified the relevant corresponding structure for each specific function claimed in the

’8,253, ’832, and ’632 patents. If the Court adopts those constructions, rather than the district court’s omnibus construction, the project viewer still provides the necessary inventive concept. *See* BlueBr.63-64; Appx50-51(8:60-9:29).

Google asserts the structure Impact Engine identifies is too abstract because it supposedly “uses generic functional language” and covers “a variety of third party formats” for completed communications. RedBr.42. That argument, however, is contradicted by the specification, which describes three project viewers that enable “live playback of the communication project,” “embedded” editing of “desired content in the containers” described in “the core files,” and sending “completed communication files” in specific formats. Appx50-51(8:60-9:29). These algorithms restrict how the claimed system sends advertisements through “specific technologic[al] modifications” that results in “patent-eligible subject matter.” *Trading Techs. Int’l v. CQG*, 675 F. App’x 1001, 1004-05 (Fed. Cir. 2017).

### D. Google’s Alternative Invalidity Challenges Should Be Rejected.

The district court rejected Google’s §101 arguments for claim 9 of the ’497 patent, claim 1 of the ’6,253 patent, and claim 30 of the ’898

patent. Appx18-19; Appx11485-11486. As an alternative ground for affirmance, Google asks this Court to reverse the district court and enter judgment that those claims are not patent-eligible. That request is procedurally flawed and wrong on the merits.

This Court does not have jurisdiction to invalidate claim 9 of the '497 patent or claim 1 of the '6,253 patent because Google did not cross-appeal. The district court held those claims were not infringed, so an invalidity ruling would alter the judgment and strip Impact Engine of patent rights the district court left undisturbed. *TypeRight Keyboard v. Microsoft*, 374 F.3d 1151, 1157 n.4 (Fed. Cir. 2004). Because affirmance on "alternative grounds" is only appropriate if it "would neither expand nor contract the rights of either party established by the judgment below," *Granfinanciera v. Nordberg*, 492 U.S. 33, 38-39 (1989), "[i]nvalidity cannot be an alternative ground for affirming a judgment of noninfringement." *Unwired Planet v. Apple*, 829 F.3d 1353, 1359 (Fed. Cir. 2016).

It makes no difference that Google raised invalidity as an affirmative defense. RedBr.42-43. That affirmative defense would invalidate the relevant claims just the same as a counterclaim. To

achieve that result, and flip the district court's invalidity ruling for the '497 and '6,253 patents, "a cross-appeal is necessary." *TypeRight*, 374 F.3d at 1157 n.4. Google did not file one.

The district court's §101 analysis for the '497 and '6,253 patents is, in any event, correct. Claim 9 of the '497 patent and claim 1 of the '6,253 patent recite project viewers that render communications. Appx54(16:6-10); Appx78-79(14:64-15:3). The specific algorithms for rendering those communications, under either the district court's or Impact Engine's constructions, offer specific concrete steps that are anything but abstract. *See* Appx7; BlueBr.59-63. Those algorithms describe not just a desired result, but how to achieve that result. *See* Appx48(4:27-42).

That leaves claim 30 of the '898 patent, a claim the district court erroneously invalidated under §112 but deemed patent-eligible. As the district court recognized, claim 30 is limited to a system that generates a communication "including a collection of slides comprising a grouping of design layers, design elements, and content containers" that is "a particular format." Appx18-19; Appx214-215(18:59-62, 18:65-19:5). Unlike the claims in *Hawk Technology Systems v. Castle Retail*, 60 F.4th 1349, 1358-59 (Fed. Cir. 2023) and *ChargePoint v. SemaConnect*, 920

F.3d 759, 772-75 (Fed. Cir. 2019), which "fail[ed] to recite a specific solution to make [an] alleged improvement," *Hawk*, 60 F.4th at 1358, this claim language describes specific data structures for efficiently and intuitively making, updating, tailoring, and distributing media-rich online advertisements. That is enough to overcome Google's arguments and affirm claim 30 is patent-eligible.

## II. The District Court Improperly Granted Summary Judgment Of Noninfringement.

The district court separately granted summary judgment that claim 9 of the '497 patent and claim 1 of the '6,253 patent are not infringed based on an erroneous construction of "project viewer." In defense of that decision, Google contends Impact Engine forfeited its claim-construction argument, the district court correctly construed the claims, and there is no genuine dispute Google's products do not infringe under the district court's construction. Google is wrong across the board.

### A. The District Court Improperly Construed The Claimed "Project Viewer."

#### 1. Impact Engine Did Not Forfeit Its Claim Construction Arguments.

Impact Engine did not forfeit its arguments about the appropriate corresponding structure for the "project viewer" term. The district court

initially held project viewer is a means-plus function term over Impact Engine's objection, but left the corresponding structure for each of the functions the project viewer performs undefined. Appx7. From that point forward, the parties disputed what the corresponding structure should be. Appx9855-9863; Appx7878-7885; Appx11357-11358; Appx11371-11373. Impact Engine criticized Google in its summary judgment papers for "requiring all functions and all disclosed structures for all claims," Appx9856, and proposed alternative corresponding structure tailored to each claimed function, Appx8352-8354(¶¶249-254); Appx8393(¶¶296); Appx8486(¶¶379).

The structures Impact Engine proposed below are the same ones it advances here. *Compare* Appx9856; Appx8352-8354(¶¶250-254); Appx8393(¶¶296); Appx8486(¶¶379), *with* BlueBr. 59, 66-67. There is thus nothing "new" about Impact Engine's claim-construction position, RedBr.45-46, and Google and the district court "had fair notice and an opportunity to address" Impact Engine's arguments. *CCS Fitness v. Brunswick*, 288 F.3d 1359, 1371 (Fed. Cir. 2002); *Chaffin v. Braden*, 696 F. App'x 1001, 1006 (Fed. Cir. 2017); *Vistan v. Fadei USA*, 547 F. App'x 986, 989 n.1 (Fed. Cir. 2013). After considering those arguments, the

district court rejected the corresponding structure Impact Engine proposed. Appx24-25. Impact Engine, as is its right, appeals that decision.

#### 2. The District Court Erred By Not Tailoring The Required Structures To The Claimed "Project Viewer" Functions.

Turning to the merits, the district court improperly construed "project viewer"—a means-plus-function term—as corresponding to structure beyond its claimed functions. Appx7; Appx24-25. Although the claimed project viewer performs four different functions across different claims, the district court required the same 300-plus lines of structure from the specification for every project viewer function. Appx24-25. Because no claim requires a project viewer performing all those functions, this construction is erroneous.

Google does not dispute that identified structure must be tailored to claimed functions and that the asserted claims reciting a project viewer task it with different functions. Instead, Google argues the district court only construed project viewer with respect to the "rendering" function. RedBr.47-51. That is wrong.

Google argued project viewer should be construed for all claims and offered different structures for different claimed functions. Appx2552-2553; Appx7388. The district court recognized in its claim construction order that the claimed project viewer performs four different functions (not just rendering) across different claims, but proceeded to identify a large swath of the specification (4:27-9:19) as encompassing *all* of those functions. Appx7. For Google to now suggest this same portion of the specification covering all functions applies solely to "rendering" is nonsense.

Columns 4:27-9:19 indisputably include structure unnecessary for rendering a communication, *i.e.*, "serializing the project slides and content into a format that can be stored or transmitted. Appx3. One example is an algorithm for playing back a communication in "auto-play on [or] auto-play off" mode. Appx48(4:46-49). Auto-play may be a function the project viewer performs, but it has nothing to do with serializing the communication. A few columns over, the specification describes "View Modes" associated with "live playback" and "edit[ting]" views. Appx50-51(8:60-9:9). These view modes are distinct from the

structure necessary to "render out or 'serialize' completed communication files." Appx51(9:1-9).

The other structures Google identifies are not necessary to perform the claimed rendering either. Algorithms for "loading content for playback" and "exchanging information and commands between layers," RedBr.52, are not necessary for "serializing the project slides and content into a format that can be stored or transmitted." Appx3; Appx8353-8354(¶253). Moreover, "defining the layout and content of communications" involves embodiments of the project object itself, RedBr.52; Appx8352(¶251), and no such specific embodiments are a prerequisite for receiving, loading, and interpreting the project object for purposes of serializing communication components, Appx8352(¶250); Appx8353-8354(¶253).

The "exemplary design files" describe a specific implementation of the rendering algorithm, not the algorithm itself. RedBr.52-53; *see* Appx49-50(5:7-8:49). A means-plus-function term is not limited to "specific embodiments of the invention" or particular "implementations of the algorithm." *Univ. of Pittsburgh v. Varian Med. Sys.*, 561 F. App'x 934, 941 (Fed. Cir. 2014). The algorithm itself is disclosed at column

4:27-42, which describes "load[ing] and interpret[ing]" a project object to "determine[] a load sequence for the communication project content" and representing individual "[s]lides" as "elements in an array." Appx48(4:27-42). This algorithm is neither "inadequate" nor "indefinite." RedBr.53.

Google's argument also contradicts the construction of project viewer it originally proposed—a construction that identified column 4:27-46 as the algorithm for rendering a communication. Appx2552-2553.[2] Dr. Wicker never criticized this proposed structure as "*under*inclusive." RedBr.52. The testimony Google cites criticized a different proposal to limit the project viewer's corresponding structure across *all claims* and *every claimed function*. Appx12465-12467 (citing Appx12399(¶39)). Google pretends it never changed its position but merely shifted its "project builder" construction to the "project viewer." RedBr.53-54. That argument ignores that Google's original "project builder" construction was for significantly more functionality than rendering a communication. Appx2347-2348.

---

[2] Google proposed also including 8:61-9:5 as corresponding structure based on a construction of "render" the district court did not adopt. *See* Appx7400; Appx7402; Appx3.

Google's final argument that the district court's judgment somehow makes any error harmless because it only found "project viewer" claims requiring the rendering function not infringed is also wrong. RedBr.50-51, 54-55. The district court's noninfringement decision cannot stand precisely because its construction of "project viewer" demands *non-rendering* structure for *rendering* functionality. Appx24-25. And the district court's claim construction order leaves no doubt its construction includes structure unrelated to rendering. The court identified four "functions performed by the Project Viewer" and held "[t]he structures disclosed to perform" all of those claimed functions "are described at Col. 4:27 through Col. 9:19." Appx7. By later ruling on summary judgment that all this structure is necessary for rendering a communication, Appx27, the district court left no corresponding structure for the other claimed functions.

Google's "project viewer" arguments underscore the confusion caused by the district court's inconsistent and ever-shifting treatment of that term. The district court, at claim construction, identified "[t]he structures disclosed to perform the functions of the project viewer" without identifying which structures corresponded to any individually

claimed function. Appx7. Later, at summary judgment, the district court held the project viewer must include *all* structures in the specification regardless of the claimed function it performs. Appx24-25. Yet, at the same time, the district court decided project viewer is not a means-plus-function term in certain claims reciting certain functions, at least for purposes of §101, but rather "a known programming construct operating in a manner familiar to one of skill in the art." Appx25-26. This contradictory analysis makes no sense. A term cannot be a means-plus-function limitation in some claims, but not others. On appeal, Google essentially takes an all-of-the-above approach that repeats the district court's error of treating the claimed "project viewer" like a chameleon that constantly changes colors.

The Court should fix this error by narrowing the corresponding structure for the rendering functionality to the algorithm necessary to perform that function—the algorithm described in column 4:27-42. Google chose not to dispute the corresponding structure Impact Engine identified for the remaining functions the project viewer performs. BlueBr.63-67; RedBr.54-55. The Court should replace the district court's omnibus construction of "project viewer" with these uncontested

function-by-function constructions. *See MobileMedia Ideas v. Apple*, 780 F.3d 1159, 1171 (Fed. Cir. 2015); *Clearstream Wastewater Sys. v. Hydro-Action*, 206 F.3d 1440, 1446 (Fed. Cir. 2000). Identifying the structure for each claimed function will help guide the Court's §101 analysis in this appeal and guide the parties and district court on remand.

### B. Material Factual Disputes Preclude Summary Judgment Of Noninfringement.

Google does not dispute that, if this Court rejects the district court's "project viewer" construction, the noninfringement summary judgment decision must be vacated. RedBr.57. But even under the district court's construction, factual disputes preclude summary judgment of noninfringement. Impact Engine has built a factual record—including fact and expert testimony, Google documents, and source code—sufficient to show every structure in columns 4:27–9:19 is present in the accused products. *See* BlueBr.72-74. Google repeats the district court's mistake by overlooking this factual evidence. RedBr.55-57; Appx24-25.

*First*, Google argues Impact Engine's expert "never mapped the corresponding structure specified in the court's construction onto the accused products." RedBr.55. That is false. Dr. Wicker divided the analysis into nine separate pieces, each of which he mapped onto Google's

products. *See* Appx8352-8353(¶¶249-251); Appx8354(¶255); Appx8721(¶594); Appx8886(¶744); *see also* Appx8235-8236(¶209); Appx8318-8325(¶¶237-239); Appx8360-8362(¶¶263-264); Appx8368-8370(¶¶272-273); Appx8388-8391(¶¶283-287); Appx8395-8400(¶¶301-303); Appx8660-8699(¶¶512-521); Appx8886-8890(¶¶745-754). The district court did not grapple with this evidence in its summary judgment order, and instead incorrectly asserted that Dr. Wicker "did not apply any of this detailed description." Appx24-25.

*Second*, Google argues Impact Engine presented insufficient evidence that the accused products include the "embodiments of the project object structure defining layout" and "content" in columns 5:7-8:49 of the specification. RedBr.55-57 (citing Appx49-50(5:7-8:49)). But that argument ignores copious evidence Impact Engine's expert cited and discussed to support his opinions, which show the accused products contain the specific files in the specification or their equivalent. *See* Appx8390-8391(¶287); Appx8667-8668(¶520); Appx8890(¶754); Appx11445-11450; Appx8235-8272(¶¶207-223); Appx10183-10202(¶¶53-125); Appx10217-10219(¶¶151-155); Appx10335-10338.

Under any "project viewer" construction, the district court's summary judgment of noninfringement must be set aside.

## III. The District Court Erroneously Granted Summary Judgment Of Invalidity Under §112.

Claim 30 of the '898 patent requires a "compiling engine" that "group[s] the design layers, design elements, and content containers into the collection of slides." Appx215(20:11-18). In two short paragraphs, the district court granted summary judgment that the '898 patent does not enable or adequately describe a compiling engine with this feature. Appx27.

Google's defense of this decision only confirms genuine factual disputes should have foreclosed summary judgment. Google concedes it offered no expert testimony to support its motion, admits Impact Engine submitted expert testimony rebutting Google's arguments, and does not contest the district court nowhere acknowledged Google's clear-and-convincing burden of proof or the governing legal standard for enablement and written description. Google cannot show no reasonable jury could find its proof less than clear and convincing based on so little.

Google's admission that the specification describes how a "project viewer" would perform the claimed tasks of the "compiling engine" is

enough to reverse the district court. RedBr.58-59. Dr. Wicker offered undisputed testimony that skilled artisans "would have understood that the functionality attributed to the project viewer in certain embodiments may similarly be incorporated into other modules, such as the compiler or compiling engine," especially given its implementation "in software." Appx10493-10494(¶1191).

Google discounts Dr. Wicker's testimony because a compiling engine that performs that functionality is not *expressly described* in the specification. RedBr.61. But that has never been the standard. Rather than limiting the specification to the embodiments it expressly describes, the written description requirement asks whether the specification "reasonably conveys" that Impact Engine "had possession of the claimed subject matter as of the filing date," *Ariad Pharm. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Enablement likewise turns on whether the specification enables a skilled artisan to make and use the claimed invention. 35 U.S.C. § 112(a); *Amgen v. Sanofi*, 143 S. Ct. 1243, 1254 (2023); *FS.com v. Int'l Trade Comm'n*, 65 F.4th 1373, 1375 (Fed. Cir. 2023). In answering those questions, the specification must be "viewed from the perspective of one of skill" in the relevant art, *Ajinomoto*

*Co. v. Int'l Trade Comm'n*, 932 F.3d 1342, 1359 (Fed. Cir. 2019), and thus "a patentee can rely on information that is 'well-known in the art.'" *Streck v. Rsch. & Diagnostic Sys.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012). Explaining what was well-known in the art is not an appeal to obviousness as Google contends, but rather reflects how skilled artisans would have understood the specification.

The district court never tried to undertake the legally required analysis before invalidating claim 30. Appx27. Google's cases do not support its argument that a district court can invalidate a patent without mentioning—much less attempting to apply—the governing legal standard. RedBr.62-63. In *Trustees of Boston University v. Everlight Electronics*, both parties' experts agreed it was "impossible" to practice a portion of the claim, 896 F.3d 1357, 1362 (Fed. Cir. 2018), and the district courts in Google's other cases—unlike here—analyzed record evidence. Google's potshots at Impact Engine's expert's testimony (beyond being incorrect) do not change that the district court simply never addressed this evidence. RedBr.63; Appx27.

The district court further erred by not addressing Impact Engine's forfeiture arguments. Google ignored the local rules by not raising either

written description or enablement in its invalidity contentions, which is an issue Google concedes "the district court did not expressly address." RedBr.60; *see* S. Dist. Cal. L.P.R. 3.3(e), 3.6(b); Appx11487 (requiring invalidity contentions). Google offers several reasons why the district court *could have* chosen to excuse Google's rules violation, but that is an appeal to discretion the district court never exercised. *See In re Nintendo*, 544 F. App'x 934, 940 (Fed. Cir. 2013).

Google's harmless-error arguments are equally meritless. Google's late assertion of its §112 invalidity contentions during expert discovery deprived Impact Engine of the opportunity to build a more fulsome factual record and to consider how Google's §112 arguments might affect claim construction. That is why the local rules require invalidity contentions at the beginning of the case, not midstream.

For that reason alone, the district court's §112 invalidity rulings should be vacated with instructions to address Impact Engine's forfeiture arguments. Rather than vacate, however, the Court should reverse. Impact Engine offered largely undisputed expert testimony, and that testimony creates material factual disputes over how a skilled artisan

would read the patent's disclosure and the state of the art at the time of the invention.

## CONCLUSION

The district court's judgment should be reversed.

June 26, 2023

Respectfully submitted,

*/s/ Jason M. Wilcox*

Jason M. Wilcox, P.C.
Stephen C. DeSalvo
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 389-5000

Garret A. Leach, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Sharre Lotfollahi, P.C.
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
(310) 552-4200

*Counsel for Plaintiff-Appellant Impact Engine, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This brief complies with the type-volume limitations of Fed. Cir. R. 32 and Fed. R. App. P. 32. According to the word processing system used to prepare it, the brief contains 6,989 words.

*/s/ Jason M. Wilcox*