PERKINS COIE

33 East Main Street
Suite 201
Madison, WI 53703-3095

T +1.608.663.7460
F +1.608.663.7499
PerkinsCoie.com

September 8, 2023

Andrew T. Dufresne
ADufresne@perkinscoie.com
D. +1.608.663.7492

**VIA CM/ECF**

Mr. Jarrett B. Perlow, Clerk of Court
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

**Re: *Impact Engine, Inc. v. Google LLC*, No. 22-2291**
**Notice of supplemental authority under FRAP 28(j)**

Dear Mr. Perlow:

The Court's recent opinion in *USC IP Partnership, L.P. v. Meta Platforms, Inc.*, No. 22-1397, underscored many of the patent-eligibility principles that render Impact Engine's claims invalid here. In both cases, the claims used abstract, functional language to recite steps for manipulating and presenting information based on user preferences. The ineligible claims in *USC IP* recited using an "intent engine" to determine user intent from user inputs and recommend webpages based on the perceived user intent. Op. 4-5. Impact Engine's claims are similarly directed to the abstract idea of generating customized computer communications based on user-provided information. RedBr. 25-28. And both sets of claims used computers only to automate those abstract steps, without improving the functionality of the computer itself. RedBr. 27, 30-31; Op. 6-7. This Court has repeatedly invalidated such claims under § 101.

In *USC IP*, the patentee argued that its claims recited a specific solution to a technical problem, but this Court rejected that assertion because the claims failed to specify *how* the claimed process was performed and instead used only "high-level functional language," such as "purely functional black box" references to an "intent engine." Op. 6. Impact Engine likewise contends that "specific steps" for accomplishing the claimed result save its claims from ineligibility. *E.g.*, BlueBr. 33-34; GreyBr. 6-8.

But as in *USC IP*, Impact Engine points to nothing more than generic, functional limitations such as "'a media repository for storing'" items for an ad, "a 'compiler' tasked with 'integrating' items from that repository," and "a 'project builder' tasked with 'selecting' items for the ad." GreyBr. 7 (quoting claims); *see also* RedBr. 31-33. Just like the "intent engine," those limitations recite nothing more than black-box functionality and provide no meaningful limits on how the claimed abstract idea is carried out.

Although *USC IP* is non-precedential, it provides yet another data point highlighting the ineligibility of "do it on a computer" claims that use broad, generic, functional language to capture abstract concepts focused on processing and presenting information.

Respectfully submitted,

/s/Andrew T. Dufresne
Andrew T. Dufresne

*Counsel for Google LLC*

cc: All counsel of record via CM/ECF

Attachment

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**USC IP PARTNERSHIP, L.P.,**
*Plaintiff-Appellant*

**v.**

**META PLATFORMS, INC.,**
*Defendant-Appellee*

---

2022-1397

---

Appeal from the United States District Court for the Western District of Texas in No. 6:20-cv-00555-ADA, Judge Alan D. Albright.

---

Decided: August 30, 2023

---

TODD ERIC LANDIS, Williams Simons & Landis PLLC, Dallas, TX, argued for plaintiff-appellant. Also represented by MICHAEL SIMONS, FRED WILLIAMS, Austin, TX; JOHN WITTENZELLNER, Philadelphia, PA.

HEIDI LYN KEEFE, Cooley LLP, Palo Alto, CA, argued for defendant-appellee. Also represented by MARK R. WEINSTEIN; PHILLIP EDWARD MORTON, Washington, DC.

---

Before NEWMAN, REYNA, and CUNNINGHAM, *Circuit Judges*.

NEWMAN, *Circuit Judge*.

USC IP Partnership, L.P. ("USC") is the owner of United States Patent No. 8,645,300 ("the '300 patent"), entitled "System and Method for Intent Data Processing." The patent relates to a method for predicting which webpages to recommend to a web visitor based on inferences of the visitor's "intent."

USC brought suit for infringement against Facebook, Inc., succeeded by Meta Platforms, Inc. (collectively, "Meta") in the United States District Court for the Western District of Texas, asserting that the feature "News Feed" infringes claims 1–17 of the '300 patent. Meta moved for summary judgment of invalidity of all the asserted claims on the ground that they are ineligible for patenting, under 35 U.S.C. § 101. The district court granted summary judgment that claims 1–17 are invalid under § 101.[1] We affirm the district court's judgment, for the decision conforms with precedent interpreting and applying § 101.

STANDARD OF REVIEW

Validity under 35 U.S.C. § 101 is a question of law, and receives *de novo* review. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Foundational questions concerning § 101, such as "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field," are questions of fact, and a district court's findings thereon are reviewed for clear error. *Id.* at 1368.

---

[1] *USC IP P'ship, L.P. v. Facebook, Inc.*, 576 F. Supp. 3d 446 (W.D. Tex. 2021) ("Dist. Ct. Order").

We review the grant of summary judgment under the law of the regional circuit, here the Fifth Circuit. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Warren v. Fed. Nat'l Mortg. Ass'n*, 932 F.3d 378, 382 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). The Fifth Circuit gives *de novo* review to the grant of summary judgment. *E.g.*, *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014).

## DISCUSSION

Patent claims must be directed to patent-eligible subject matter. Section 101 of Title 35 provides:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

Abstract ideas are not eligible for patenting, for abstract ideas are part of the "basic tools of scientific and technological work." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972); *see also Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). The courts have attempted to clarify the boundary between the unpatentable idea and the patent-eligible application of the idea. *See Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71–72 (2012) (recognizing that on the one hand "monopolization of [basic tools of scientific and technological work] through the grant of a patent might tend to impede innovation" but on the other hand "too broad an interpretation of this exclusionary principle could eviscerate patent law").

In *Alice*, the Supreme Court proposed a two-step analytical process. The first step is to determine whether the patent claim is directed to an ineligible category such as an

abstract idea, and if so, the second step is to determine whether there is "an inventive concept . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (internal quotation marks, citations, and alteration omitted). Here, the district court applied this framework, and granted summary judgment of invalidity of all claims.

The '300 patent claims a method for determining the intent of a visitor to a webpage and using that intent to select and recommend webpages to the visitor. Claim 1 was deemed representative:

> 1. A method for predicting an intent of a visitor to a webpage, the method comprising:
>
> > receiving into an intent engine at least one input parameter from a web browser displaying the webpage;
> >
> > processing the at least one input parameter in the intent engine to determine at least one inferred intent;
> >
> > providing the at least one inferred intent to the web browser to cause the at least one inferred intent to be displayed on the webpage;
> >
> > prompting the visitor to confirm the visitor's intent;
> >
> > receiving a confirmed intent into the intent engine;
> >
> > processing the confirmed intent in the intent engine to determine at least one recommended webpage that matches the confirmed intent, the at least one recommended webpage selected from a plurality of webpages within a defined namespace;

> causing the webpage in the web browser to display at least one link to the at least one recommended webpage;
>
> prompting the visitor to rank the webpage for the inferred intent;
>
> receiving a rank from the web browser; and
>
> storing a datapoint comprising an identity of the webpage, the inferred intent and the received rank.

The parties agree that the term "intent," as used in the '300 patent, means "a unique purpose or usage of the website," and that "intent engine" means "a software component for collecting and analyzing intent data from visitors." USC Br. 1–2; Meta Br. 4, 5 n.2. The '300 patent explains that website navigation can be enhanced "by recording a visitor's intent and recording page rankings that indicate how well the pages of a website match the visitor's intent." '300 patent at Abstract. The patent further explains that visitor intent can be inferred from historical intent data, the Uniform Resource Locator, the user's visits, and optional user intent confirmation. *Id.*

The district court applied the *Alice* two-step analysis. At *Alice* step one, the district court found that the '300 patent claims "are directed to the abstract idea of 'collecting, analyzing and using intent data,'" drawing analogy to the claims invalidated in *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016). Dist. Ct. Order at 456. At *Alice* step two, the district court found that the '300 patent claims do not "recite any elements, when considered individually or 'as an ordered combination,' [that] contain anything 'significantly more' than the abstract idea itself." *Id.* at 456–57.

The district court did not accept USC's position that the intent engine serves a role that is not conventional, generic, or well-known. The district court held that the intent

engine "is a purely functional 'black box' implemented using standard cloud platforms from well-known vendors." Dist. Ct. Order at 457. The district court described USC's expert's testimony as making a "conclusory assertion that the claims present a 'unique and novel way of delivering webpages to consumers that was not previously demonstrated in the prior art,'" finding that this testimony was not "backed by any concrete facts from the specification or the prior art." *Id.* The district court concluded that the claims are unpatentable.

The district court's analysis and conclusion conform to precedent. The claimed concept of collecting and using intent data is not a technical solution to a technical problem, unlike the concept claimed in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), on which USC relies. Although USC argues that *DDR* supports eligibility of USC's invention, in *DDR* the claimed method created a technical way for "a website visitor, in a sense, to be in two places at the same time," overcoming "a problem specifically arising in the realm of computer networks" and "necessarily rooted in computer technology." *Id.* at 1248, 1257. The district court correctly explained that the claims herein are not directed to improvements in computer functionality, for the "claims only recite high-level functional language" such as "processing the confirmed intent," with no limitation as to "how 'processing' steps are performed." Dist. Ct. Order at 455–56.

We agree with the district court that the idea of using computers to predict the intent of visitors is insufficient to render the idea non-abstract. *See Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (a process of collecting, analyzing, and manipulating data on a computer "is a quintessential 'do it on a computer'" claim and an ineligible abstract idea). The district court correctly found that nothing recited in the '300 patent claims, despite the references to web browsers and webpages, affects the functionality of the computer itself.

*See Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) ("We have also held that improving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer functionality.").

Turning to *Alice* step two, the district court correctly found that the claims do not contain "significantly more" to remove the claims from generality and abstraction. Dist. Ct. Order at 456–57. The district court also correctly observed that "'web pages,' 'web browsers' and 'databases' . . . were well known in the prior art," and "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Id.* at 457 (quoting *Electric Power*, 830 F.3d at 1355).

The district court held that other claim elements, including the "intent tool," "ranking tool," and "widget," also "do not provide any inventive concept because [they are] standard web browser functionalit[ies]." *Id.* Although USC argues that "the intent ranking formula" in the '300 patent specification provides sufficient substance for the operation of the "intent engine," we agree with the district court that the intent engine is only "a purely functional 'black box,'" Dist. Ct. Order at 457, for the claims are not directed to the use of this formula nor do they cover the formula itself, and the specification states that skilled artisans would know "many standard formulas" that would be effective. '300 patent col. 10 ll. 25–27.

The district court found no genuine dispute of material fact, and that a factual dispute did not arise from the USC expert witness' "conclusory assertion that the claims present a 'unique and novel way of delivering webpages to consumers that was not previously demonstrated in the prior art.'" Dist. Ct. Order at 457 (quoting USC expert Dr.

Jennifer Golbeck's Rebuttal Report ¶ 379). We agree, for conclusory expert opinion does not present a genuine factual dispute to prevent summary judgment. *See Jones v. United States*, 936 F.3d 318, 323 (5th Cir. 2019) (An expert affidavit with "conclusory . . . and unsubstantiated assertions cannot defeat summary judgment." (internal quotation marks omitted)); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) ("Without more than credentials and a subjective opinion, an expert's testimony [offered to defeat a motion for summary judgment] that 'it is so' is not admissible.").

We have considered USC's remaining arguments and deem them unpersuasive. The district court's analysis and decision conform to law and precedent. Thus we affirm the ruling that claims 1–17 of the '300 patent are invalid.

**AFFIRMED**